It's appeal number 24-1691, Rabdeau v. Colvin. All right, now we've got Mr. Ungermeyer. You can correct my pronunciation, please. Good morning. My name is Vince Ungermeyer. I represent Plaintiff Appellant Claudette Rabdeau. I'd like to reserve two minutes for rebuttal. The parties here agree that since May 2018, Ms. Rabdeau has been totally disabled by her medical impairments. Several impairments not relevant to this appeal prevent her from returning to her prior work as a caregiver for disabled children. However, what prevents her from returning to other work, the parties agree, is her absenteeism issues stemming from primarily her intractable cervicogenic migraines. The Commissioner's position on whether or not medical absences would have occurred prior to May 2018 has been difficult to pin down. Previously, acting on findings from ALJ Chad Gendrew, the Commissioner took the position that there would be one medical absence per month in the period prior to May 2018. The Appeals Council did not intervene when Ms. Rabdeau challenged that as an underestimate, and when she sued in federal court, the Commissioner filed the transcript in lieu of answer, again denying that this was an overestimate. The Commissioner's position today is now different. Acting on findings from ALJ Gary Fyberg, the position is now that there would have been no consistent medical absences due to migraines or any other condition prior to May 2018, even though the government's own vocational expert now says that that would have eliminated Ms. Rabdeau's job prospects, assuming that she could not return to her prior work. I believe that that new finding puts this case into direct tension with Martin V. Saul. Martin V. Saul does not bind ALJ Fyberg to ALJ Gendrew's findings. It doesn't even require that when he departs from those findings, he engage in a comparative analysis, but it does require that he grapple with the prior findings, and I don't think that there is real disagreement between the parties that that did not occur here. Sorry, engage versus grapple? Comparative analysis versus grapple. And I think the fact that in Martin, the fact that they are setting that dichotomy is further proof that it's not just a dictum part of the decision. The court chose to publish this decision. It expected district courts to be following it, and so it advised the district courts of what the range of acceptable analysis is and disclaimed any intention that they reverse in cases where there's not a fulsome comparative analysis between the two opinions. And I don't think that Martin is on a jurisprudential island. This court has repeatedly found that some pieces of evidence are critical and that if they favor the applicant and are not mentioned in the judge's decision, it's reversible error. So you think ALJs need to treat other judicial decisions as evidence? Yes, I think it would be true as evidence. I mean, I think the label is less important than the fact that we see this when it comes to findings by other administrative agencies. And yes, and I think as the Fourth Circuit described it, the finding of the prior ALJ or the prior commissioner is important and probative evidence because it is coming from a neutral and impartial tribunal. So let's apply that standard to this court when we evaluate Social Security disability appeals. Are we required to engage with the district judge's analysis? It's reviewed de novo. We routinely just bypass the district court analysis. When I was a district judge, it made me feel a little ignored, but was that error? Well, there aren't the same requirements of an explanation imposed on this court. And certainly, I believe that frequently judges, one of the first things they look at when they handle an appeal is the district court decision. I think that's a common practice. Sure. Or when the Supreme Court resolves a circuit split, they don't need to go through a long analysis of the opinions on each side of the split, do they? No, Your Honor. But they aren't governed by the Social Security Act, which outlines judicial review and empowers Article III courts to oversee the analysis of the ALJ to see if it is supported by substantial evidence. And the court has long interpreted the substantial evidence standard as broader than just the evidence that is cited in the decision. It has to look at the evidence that is not mentioned. Otherwise, it can't really understand the ALJ's explanation. This is necessary for appellate review. And otherwise, if those standards aren't enforced, it doesn't really make the review provisions enforceable. The judges can just list out every piece of evidence on the record and expect it to survive review. Well, in fact, they don't even have to list out every piece of evidence on the record. They absolutely do not, Your Honor. In fact, I think certainly many cases where that's reversed is because, oh, frequently evidence is going to be redundant. Evidence on one treatment note is going to be the same as the next. Or it's going to be subject to ambiguities and not really present a clear statement on what the evidence means. And so it doesn't necessarily justify a remand just because certain pieces are left out. But in key cases, certainly if an entire medical opinion is left out, if a determination by another agency that adjudicates disabilities is left out, if a new test or a new diagnosis is left out, our brief cites cases where that is treated as reversible error and leads to a harmless error analysis. And I think that that's one key deficit in this case so far is that instead of conducting a harmless error analysis and hypothesizing what a new ALJ would do if he corrects the error identified in appeal and determining if there's a reasonable likelihood of a different outcome, I think the district court in particular just sort of presupposes that no error occurred and conducts a substantial evidence review of the remaining evidence. And that's not typically how harmless error analysis works. And it's not found in our court's precedents. It's not found in analogous cases from other circuits where they're looking at agency determinations of the same set of facts that change over time. Mr. Engermeyer, the government points out that the plaintiff had been working successfully for many years despite her migraines, right? What was it that changed before 2018 when everybody agrees she was disabled? Yes, Your Honor. These are cervicogenic migraines and MRIs. I'm sorry. Cervicogenic migraines. So primary headaches are headaches that don't have a cause relating to a secondary condition. Cervicomigraines, according to the International Classification System for Headaches, are secondary because they relate to a different physical problem. In this case, neck deterioration, which was confirmed in MRIs, I believe taken in 2016, or certainly prior to May 2018. And, in fact, MRIs showing a slight deterioration in the status of her neck around May 2018 is something that the government cites as part of the case for why the migraines increased after then and why Rhabdo has been disabled since then. So we believe that the deterioration in the neck did not exist prior to December 2014. And that was one of the leading causes of the increased pain. In addition to, as the doctors note, she was taking more painkillers due to all her other problems. And when she tried to taper off of those painkillers, those other problems became overwhelming, and she was unable to continue with that treatment recommendation. Let's move away from Administrative Law Judge Freiberg's reference or lack of reference to Gandro's findings, if I'm pronouncing that judge's name correctly. Judge Freiberg did acknowledge that the medical evidence showed that the severity of Ms. Rhabdo's migraines waxed and waned over time. Yes, Your Honor, we agree. And then from there, Judge Freiberg determined that the headaches weren't so persistently severe over the four-year period to have rendered her fully disabled. So there is this kind of independent finding that Judge Freiberg makes. I know you disagree with it, but why is that not substantial evidence? Why doesn't that suffice under the substantial evidence standard? With respect, I agree with the notion that her symptoms waxed and waned. I think it's clear that Botox, at least for a period of time, substantially improved her condition. And, in fact, I believe A.L.J. Freiberg's reference to waxing and waning comes not so much when he's evaluating the medical evidence, but when he's trying to reform the prior analysis of activities of daily life that A.L.J. Gendro offered, and that the Appeals Council, when it remanded the case, strongly criticized as simply not making sense, because it seemed to assume that the reported activities were occurring on the days when Ms. Rhabdo was suffering migraines, when that's not really a logical conclusion, as this court pointed out in Rhinus v. Saul. It's been a case specifically involving cervicogenic migraines, and an individual who engaged in much more strenuous activity than anything Ms. Rhabdo ever reported. She was caring for her family, which includes disabled members, and unlike employers in competitive jobs, they can't just fire her for taking some days off to recover from migraines. But getting back to A.L.J. Freiberg's analysis of the evidence in terms of what ultimately leads later to this discussion of waxing, one more point to make on that, there's really no connection between his passing reference to waxing and waning symptoms and his new RFC finding that treats her condition as static from week to week and month to month. But moving on to his analysis of Dr. Schlomer's notes, as we point out, again, there is an improvement, and I think in many cases A.L.J. would be owed a significant amount of deference in terms of interpreting records where in some cases the frequency of the migraines was not being noted and their severity wasn't being noted even after some reported improvement. But I think it's a pleasant instance of cherry-picking to take the treatment plateau from September 15th and treat that as her status and every other subsequent note that doesn't make specific reference to it. It's a close call, but what makes it decisive in my mind is the December 2017th note referring to her symptoms as well-controlled even though that corresponded with one to two severe migraines every week. And what compounds that error further is that, like A.L.J. Gendreau, when describing that record, A.L.J. Freiberg omits the mention of them being severe headaches. They're just references. Headaches. Even though in the Appeals Council's remand order, Judge Clark pointed out that this is one of the key pieces of evidence supporting Ms. Rabdo's case and that they were severe headaches, not just headaches. And because that affects how well-controlled as referenced in prior medical records, it's an important point in favor of treating those as still having some medical absences instead of finding that there were still ongoing mild headaches as described in only one single treatment note from September 2015. I know that I'm apparently out of time. Thank you, Your Honor. Thank you. Mr. Yarnell or Yarnell. Good morning. May it please the Court, Eric Yarnell on behalf of the Acting Commissioner of Social Security. We asked the Court to affirm the A.L.J.'s decision because it was reasonable and supported by substantial evidence. This case featured three different A.L.J. decisions by two different A.L.J.'s, but only one of those three decisions was the final decision of the Commissioner with respect to the period under consideration, and that was A.L.J. Freiberg's 2022 decision. Can you just connect for me A.L.J. Freiberg's objective? He cites to a lot of the objective evidence regarding the neurological findings, the treatment notes, and is there, in particular, the objective evidence. Is there a connection from that evidence to the migraines, in particular, the need to not be off work? The findings that he cites, does that support and does he make that connection? Well, Your Honor, I think that A.L.J. Freiberg was citing the absence of objective evidence in conjunction with other evidence in the record. You know where I'm going to go probably. What's the bridge? I know he cites it, but does he bridge it together? I don't recall if there's a one-to-one. A.L.J. was kind of evaluating several conditions, including migraines, as Ms. Rabideau alleged originally. With respect to migraines, there's repeated instances in the record, 2014 into 2018, of treatment being effective, her symptoms being well-controlled, she's happy. Those are the treatment notes. I want to talk about the objective evidence. So the objective evidence that's in the record during that time is unremarkable, normal concentration, normal memory. And it is the case that, given Ms. Rabideau's allegations that she was experiencing these debilitating migraines, that were affecting her functioning in many respects, that there would be some indication in those exams of some sort of deficiency because of those migraines. There was none during this period, 2014 to 2018. And it should also be said that none of her doctors during this time indicated that migraines would cause disabling limitations. No doctor opined that she would have absences because of migraines during this time, or would have any disabling limitations due to any of her conditions during this time. So in light of that, it was certainly reasonable for the A.L.J. to conclude that migraines were not disabling during this time. And I think this Court has said that in the absence of a medical opinion indicating disabling limitations, it's hard to find remandable error. I did want to note that, contrary to Ms. Rabideau's argument, A.L.J. Freiberg was not required to articulate why he was making different findings than A.L.J. Gendro. Not required, but why not just mention him? Particularly given this intense procedural history of the case. It's been up and back and up and back. Well, at the same time, I would say that when this case was remanded to A.L.J. Freiberg, Ms. Rabideau as well had the ability to argue and ask A.L.J. Freiberg to explain any deviation from the prior findings, and no argument like that was made to A.L.J. Freiberg. A.L.J. Freiberg emphasized during the hearing that he was going to issue a new decision. It was not bound by Gendro's decision with respect to the relevant period, and that it was going to be a new decision going forward because that was vacated, to analogize Judge Hamilton's point regarding de novo review that this Court engages in. The Appeals Council had vacated the portion of A.L.J. Gendro's decision pertinent to the period of 2014 to 2018. So it was not a final decision, and there is no indication that A.L.J. Freiberg believed that he was bound by it, by the prior decision, or that it had any sort of outside relevance in this case. Two A.L.J.'s reasonable minds differ, and A.L.J. Freiberg was entitled to weigh the evidence in a reasonable manner. And there's certainly no indication that A.L.J. Freiberg's findings were unreasonable, which is the key consideration in deferential standard review of substantial evidence which governs this case. This Court has said earlier this year, in fact, in Morales, that to obtain remand, the claimant has to point to evidence compelling the conclusion that the A.L.J. decision is not supported by substantial evidence. And respectfully, Ms. Rabideau has not done that here. Instead, it seems like she's mostly interested in having this Court re-weigh these instances in the record of treatment being effective, re-weigh evidence in the record of kind of unremarkable examination findings. And requests such as that are improper in federal court. As noted, treatment records 2014-2018, unremarkable. She repeatedly indicates that she's happy with treatment, that she's experienced significant improvement. This is all substantial evidence supporting the A.L.J.'s finding in this case. And I should add that Ms. Rabideau is mistaken regarding the holding and implications of Martin from 2020. Martin was about what all social security cases are about, which is substantial evidence. The Court in Martin focused on the fact that the second A.L.J. decision in Martin was those findings independently were not supported by substantial evidence. And noted that there was a prior A.L.J. decision, but remand in that case was due to the lack of substantial evidence supporting those findings in the Martin case. And if there are no further questions, we would stand on the brief and ask the Court to affirm the A.L.J. decision. Okay, very well. Thank you, Mr. Engermeyer. You had asked for two minutes, and we were questioning you, so you can have two minutes. Yes, Your Honor. I believe that, so in terms of, the government makes reference to the prior decision having been vacated. They don't point to a regulation under the Commissioner's rules that empowers the Appeals Council to vacate prior decisions, especially after they've already been remanded by a court. And most importantly, the decision in Martin had already been vacated too, and that didn't change the outcome in Martin. I think the government continues to maintain that this portion of Martin is simply dictum. That is just kind of an aside offered at the end. As I pointed out before, the fact that the section itself provides rules for fine-folding of future cases makes it very unlikely that it's dictum. This is one of many cases where, in reversing the case, the court points to multiple errors. We still have a rich history of Social Security law in the Seventh Circuit, despite the phenomenon that you could point to any portion of most decisions remanded in the case and say that, well, maybe this one was more decisive than that one, or vice versa. Moving back to the reference to compelling evidence in Morales, I think that statement is more in line with the standard for awarding benefits, which is what the court did in Martin. Only when the applicant is seeking for an award of benefits under this court's statutory powers does it need to show that all the evidence can only be shown one way. Once harmless error is established, as I believe it has here, the question is what would happen on remand if it's cured, and whether or not it would just be a waste of everybody's time because there's only one possible outcome. That's, again, why I think there was a reference before to the medical opinions in the case. Right now, there's really no medical opinion in the record that would force the ALJ's hand. If nothing else, we know that because ALJ Gendre already found that medical absences were likely, even though none of the medical opinions in the case advised him that that was what would be happening. Similarly, I think that the migraines are different from other kinds of impairments. It's reasonable to expect that if the evidence is just MRIs and there's alleged back problems, no ALJ can independently determine how much weight that person could lift with moderate deterioration at L5 and severe deterioration at L4. But in this case, migraines are very well understood. And again, ALJ Gendre was comfortable in figuring out that they would cause medical absences on days where they're occurring and where they're still severe. And I would only ask that if the case is remanded that the remand instructions include a language limiting the time frame of the appeal to the time frame from before May 2018. Thank you, Your Honor. Understood. Okay. Thank you to both counsel, and the case will be taken under advisement.